UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DANIEL GRAHAM | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:25-cv-1070 |
| | § | |
| ALLSTATE INSURANCE COMPANY, YASIR KHAN, WESTRIDGE LLC, DIRECT CONSENT LLC, and JOHN DOE OWNER OF DIRECT CONSENT LLC | § § § § | JURY DEMANDED |

**DIRECT CONSENT LLC'S RULE 12(b)(6) MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Direct Consent LLC ("Direct Consent") files its Rule 12(b)(6) Motion to Dismiss, and respectfully shows the Court as follows.

## I. BACKGROUND AND INTRODUCTION

1. On July 29, 2025, plaintiff Daniel Graham ("Plaintiff") filed his first amended complaint ("FAC") against Direct Consent. Plaintiff's primary causes of action arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiff also alleges Direct Consent violated §§ 302.101 and 302.302 of the Texas Business & Commerce Code.

2. This case should be dismissed in its entirety because Plaintiff has failed to state any viable claim against Direct Consent. Count One fails to establish either direct liability or vicarious liability under the TCPA's do-not-call ("DNC") provisions because Plaintiff does not allege Direct Consent initiated any violative calls and provides only conclusory, insufficient assertions regarding any agency relationship. Count Two should be dismissed because it is based entirely on the notion that a private individual like Plaintiff can somehow enforce technical FCC regulations, an approach that courts disfavor, and Plaintiff again fails to connect Direct Consent to any alleged regulatory

violations even if private enforcement was acceptable. Count Three fails to state a claim under the TCPA's automatic telephone dialing system ("ATDS") provisions because Plaintiff relies solely on an alleged "click" sound to argue he received a call from an ATDS, which courts have repeatedly rejected as insufficient to establish ATDS usage at the pleading stage. Finally, Counts Four and Five must be dismissed for lack of subject-matter jurisdiction because once all federal claims are dismissed, this Court should decline to exercise supplemental jurisdiction over the remaining Texas state law claims.

3. Though Plaintiff is a *pro se* litigant, he is well-versed in TCPA jurisprudence and thus well aware of the elements he must plead to survive a dismissal motion—he simply fails to plead them against Direct Consent. Plaintiff has made considerable money for himself over the years by filing TCPA claims, filing dozens upon dozens in Travis County alone.[1]

4. The deficiencies in Plaintiff's FAC are not the result of an uninformed *pro se* litigant. Rather, Plaintiff's FAC should be dismissed because Direct Consent has too tenuous a connection—if any—to the one allegedly uninvited call Plaintiff describes with any genuine allegations.

[1] Plaintiff has filed so many TCPA complaints that several news outlets have run stories about his success in making money from TCPA settlements and even noted he created a YouTube channel to teach others how to do it. *See, e.g.*, Ariana Garcia, *How a Texas Man Made Over $100K Suing Telemarketers Over Robocalls*, Chron (Mar. 24, 2022, 9:24 AM), https://www.chron.com/news/houston-texas/article/Robocalls-how-to-stop-Texas-telemarketers-17009921.php ("[Plaintiff] started a YouTube channel under the name CFO Dan where he lays out his strategy."); Dan Carson, *Texas Man Wins $75K After Tracking Down and Suing Telemarketers Over Illegal Robocalls*, Chron (Mar. 9, 2022), https://www.chron.com/business/article/Robocalls-Texas-Austin-lawsuit-Do-Not-Call-list-16989419.php; Arezow Doost, *Meet the Texas Man Who Has Made $75,000 Suing Telemarketers*, KXAN, (Mar. 6, 2022, 10:33 a.m.), https://www.kxan.com/investigations/tired-of-spam-calls-a-texas-dad-is-fighting-back-by-suing/.

## II. ARGUMENT AND AUTHORITIES

### A. Legal Standard

5. "Pursuant to Rule 12(b)(6), a court may dismiss a complaint for 'failure to state a claim upon which relief can be granted.'" *GH Am. Energy LLC v. Vegas*, No. 1:24-CV-0648-RP, 2025 U.S. Dist. LEXIS 185629, at *18 (W.D. Tex. Sept. 16, 2025) (quoting Fed. R. Civ. P. 12(b)(6)).

6. "'To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level.'" *DC Transco, LLC v. Rainbow Energy Mktg. Corp.*, No. 1:24-CV-1260-RP, 2025 U.S. Dist. LEXIS 180243, at *5 (W.D. Tex. Sept. 15, 2025) (quoting *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007)). "That is, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

7. "'The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Casaubon v. Tex. Mut. Insurance Co.*, No. 1:19-CV-617-RP, 2025 U.S. Dist. LEXIS 178907, at *5 (W.D. Tex. Sept. 12, 2025) (quoting *Ashcroft*, 556 U.S. at 678).

### B. Count One should be dismissed because Plaintiff fails to establish Direct Consent either contacted him in violation of the TCPA's DNC provisions, or that Direct Consent can be held vicariously liable for anyone else's alleged calls.

8. In Count One, Plaintiff alleges Direct Consent violated 47 U.S.C. § 227(c)(5). FAC ¶ 42. That statutory provision creates a cause of action when an individual, under certain

circumstances, receives two or more telephone calls within one calendar year despite the individual's phone number being registered on the national DNC list.

9. Plaintiff's allegations, even if accepted as true, do not amount to a DNC claim against Direct Consent. That is because Plaintiff's own allegations demonstrate Direct Consent did not violate the TCPA's DNC provision.

10. *First*, Plaintiff does not establish any degree of direct liability against Direct Consent for a purported DNC violation. "To state a claim under this subsection, a plaintiff must allege the receipt of multiple calls within a twelve-month period, made by or on behalf of the same entity, on a phone registered on the Do Not Call List." *Libby v. Nat'l Republican Senatorial Comm.*, 551 F. Supp. 3d 724, 729 (W.D. Tex. 2021). "No private right of action accrues and a telemarketer is not in violation of Section 227(c) unless and until it telephones a party more than once in any twelve-month period." *Shields v. Gawk Inc.*, No. 3:18-CV-00150, 2019 U.S. Dist. LEXIS 69338, at *10 (S.D. Tex. Apr. 24, 2019).

11. No matter how many calls a plaintiff claims to have received to support a DNC claim, he cannot assert direct liability under the TCPA without alleging facts demonstrating the defendant initiated the violative calls. *See, e.g.*, *Gulden v. Consol. World Travel Inc.*, No. 16-cv-1113, 2017 U.S. Dist. LEXIS 23350, at *3 (D. Ariz. Feb. 15, 2017) (dismissing TCPA claims where plaintiff "offer[ed] no factual support" for conclusion that the defendant was the "source of the alleged calls," and ruling that because "identity is a necessary element of all of Plaintiff's claims, this deficiency warrants dismissal of all of Plaintiff's claims"); *Childress v. Liberty Mut. Ins. Co.*, No. 17-cv-1051, 2018 U.S. Dist. LEXIS 167281, at *3 (D.N.M. Sept. 28, 2018) (no direct TCPA liability where "there [were] no factual allegations that [d]efendant actually made the telephone call at issue"); *Sepehry-Fard v. Dep't Stores Nat'l Bank*, 15 F. Supp. 3d 984, 987–88 (N.D. Cal.

2014) (dismissing where "no facts alleged showing why plaintiff believe[d] [defendants] were responsible for specifically identified calls that used prerecorded voices in violation of the TCPA"), *aff'd in part*, 670 F.App'x 573 (9th Cir. 2016).

12. Against that backdrop, Plaintiff's FAC clearly fails to make the necessary allegations to state a DNC claim against Direct Consent. Plaintiff does not allege Direct Consent initiated any calls, much less two telemarketing calls within the same year. Plaintiff instead alleges Direct Consent was involved in the alleged telemarketing as a "marketing affiliate" that supposedly "supplied and coordinated" the calls. FAC ¶ 8, 27.

13. Of note, Plaintiff only describes two incoming telephone calls in any level of detail. FAC ¶¶ 13-22. But even if Direct Consent was alleged to have initiated both, they could not satisfy the two-call requirement for a DNC claim because Plaintiff requested the second incoming call—and requested it be made to a different telephone number. *Id.* at ¶ 19 ("Plaintiff . . . instructed the caller to call back on another personal number ending in 7263.").

14. Of equal note, while Plaintiff concedes that he maintains multiple telephone numbers (which is typical of serial TCPA litigants), he is unclear: (i) whether all are on the DNC list; and (ii) which of his telephone numbers, or some combination of several of them, received the alleged "282 telemarketing calls." *See* FAC ¶ 25.

15. It is axiomatic that a phone call—telemarketing or otherwise—is not unsolicited if it is invited. That is not just common sense; that is drawn from the TCPA's plain language. *See* 47 C.F.R. § 64.1200(f)(15)(i). The "telephone solicitation" definition expressly excludes calls made with the recipient's "prior express invitation or permission," i*d.*, such as the second (of the two) calls that Plaintiff discusses in his pleading with anything more than passing mention.

16. Second, Plaintiff does not establish any form of vicarious liability against Direct Consent even if one assumes arguendo there is a viable DNC claim that could give rise to an agency theory.

17. "A seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." *In re Dish Network, LLC*, 28 F.C.C.R. 6574, 6584 (2013). While the Plaintiff does not need to provide extensive details of the agency relationship, the complaint must "sufficiently ple[a]d the plausible existence of an agency relationship between [the defendant] and the telemarketer which made the allegedly violative call." *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 U.S. Dist. LEXIS 223278, at *15 (W.D. Tex. Nov. 17, 2021).

18. A complaint is insufficient if it merely includes "the conclusory assertion" that a defendant is vicariously liable, without stating "the nature of the relationship these entities have with the unidentified telemarketing firm soliciting business on their behalf." *Callier v. Sunpath Ltd.*, No. EP-20-CV-00106-FM, 2020 U.S. Dist. LEXIS 256792, at *7 (W.D. Tex. Aug. 10, 2020) (dismissing TCPA claims where the plaintiff failed to plead any allegations that the defendant controlled, authorized, or was even aware of the telemarketer's conduct); *see also Cunningham v. Pro. Educ. Inst., Inc.*, No. 4:17-cv-0894-ALM-CAN, 2018 U.S. Dist. LEXIS 215107, at *14 (E.D. Tex. Nov. 5, 2018) ("Plaintiff does not allege that [the defendants] made any of the violating calls, how they had authority to direct any such calls, and/or otherwise indicate how they had any personal involvement whatsoever in the violative phone calls . . . ."), *rec. adopted*, 2018 U.S. Dist. LEXIS 214168 (E.D. Tex. Dec. 20, 2018). Likewise, a complaint is insufficient if it fails to include any information about "time, date, or circumstances" of the calls or any facts regarding "the source

of or phone number making the calls, indicating that this Defendant is responsible for the calls received by Plaintiff." *Cunningham v. TechStorm, LLC*, No. 3:16-cv-2879-M, 2017 U.S. Dist. LEXIS 25047, at *5-6 (N.D. Tex. Feb. 23, 2017).

19. Here, Plaintiff's FAC is the textbook example of a pleading that insufficiently alleges vicarious liability. Though Plaintiff hits the "buzz words" by mentioning "affiliate" and "ratified," FAC at ¶ 27, Plaintiff is merely parroting agency jurisprudence with his conclusory assertions. Absent are allegations that Direct Consent had authority or control over the callers, or even any knowledge about these calls. "[S]ufficient facts must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-cv-7129, 2018 U.S. Dist. LEXIS 52328, at *5 (N.D. Cal. Mar. 28, 2018); *Abramson v. 1 Glob. Capital, LLC*, No. 15-cv-61373, 2015 U.S. Dist. LEXIS 181721, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing vicarious-liability TCPA claim because the allegations "were conclusory in nature" and "merely stated, without legal support, that third parties were regularly utilized by telemarketers").

20. In sum, Plaintiff fails to plead a viable DNC claim against Direct Consent—regardless of whether Plaintiff's approach is direct or vicarious liability. Plaintiff's DNC claim against Direct Consent should, respectfully, be dismissed.

### C. Count Two should be dismissed because, assuming the law even allows individuals to sue for violations of the cited FCC regulation, Plaintiff does not allege Direct Consent actually violated any such regulations or can be held responsible for others' acts.

21. In Count Two, Plaintiff alleges Direct Consent violated 47 C.F.R. § 64.1200(d). FAC ¶ 43. That regulatory provision requires certain entities engaged in telemarketing to maintain telemarketing policies, available to individuals on-demand, covering issues such as the honoring of an individual's do-not-call request.

22. Once again, Plaintiff fails on the face of his pleading to state a cause of action against Direct Consent.

23. *First*, Plaintiff's theory is not well-favored by the courts. Courts have recognized that the FCC's highly technical regulations (*e.g.*, the requirement to produce compliance policies on-demand) should not give rise to a TCPA lawsuit. *See, e.g.*, *Boydston v. Asset Acceptance, LLC*, 496 F. Supp. 2d 1101, 1110 (N.D. Cal. 2007); *Worsham v. Travel Options, Inc.*, No. 14-cv-2749, 2016 U.S. Dist. LEXIS 118774, at *18-19 (D. Md. Sept. 1, 2016); *Burdge v. Ass'n Health Care Mgmt., Inc.*, No. 1:20-cv-0100, 2011 U.S. Dist. LEXIS 9879, at *10 (S.D. Ohio Feb. 2, 2011). The regulations are instead procedural standards, ostensibly enforced by the FCC.

24. *Second*, Plaintiff again fails to connect Direct Consent to the alleged TCPA violation with any degree of defined liability—be it direct or vicarious. Plaintiff certainly alleges that he requested a telemarketing policy from an entity other than Direct Consent. FAC ¶¶ 22, 24. But he fails to make any similar allegations against Direct Consent. This failure is unsurprising. Plaintiff fails to provide any detail on any calls he alleges to have received from or otherwise had with Direct Consent—to the extent the FAC is construed as suggesting Plaintiff had any communications with Direct Consent at all.

25. Simply put, any claims against Direct Consent arising from a regulatory violation should be dismissed because Direct Consent is not alleged to have committed the acts (or to be responsible for the acts of others) that actually give rise to the purported violation.

**D. Count Three should be dismissed because Plaintiff does not allege Direct Consent initiated any calls whatsoever, much less that Direct Consent used any technology considered to be an ATDS.**

26. In Count Three, Plaintiff alleges Direct Consent violated 47 U.S.C. § 227(b)(1)(A). That provision creates a cause of action where telemarketers, under certain circumstances and for certain types of marketing communications, contact individuals using an ATDS.

27. Any review of Plaintiff's FAC, however, reveals that Plaintiff's allegations do not—and even if accepted as true, could not—establish an ATDS claim.

28. The TCPA defines an ATDS to mean "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

29. Plaintiff's allegations are conspicuously detached from this definition. Indeed, Plaintiff's FAC largely avoids making any effort to describe the technology allegedly used to contact him. Plaintiff instead alleges, "This call contained a distinct click which is a recognizable mark of an auto dialer system." FAC ¶ 18.

30. Courts across the country have considered alleged clicks, delays, or prerecorded music at the start of a call, and ruled they are insufficient to state a TCPA claim. *See, e.g.*, *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1308-09 (S.D. Fla. 2016) ("Courts have routinely rejected similar claims by plaintiffs who try to maintain a TCPA claim on the belief that an ATDS was used based on 'clicks, 'delays,' or 'dead air' on the other end of the line."); *Smith v. Aitima Med. Equip., Inc.*, No. 16-cv-0339, 2016 U.S. Dist. LEXIS 113671, at *18 (C.D. Cal. July 29, 2016) ("One call and one pause, standing alone, do not take the claim of the use of an ATDS beyond the speculative level."); *Danehy v. Jaffe & Asher, LLP*, No. 5:14-cv-60, 2015 U.S. Dist.

LEXIS 32579, at *22 (E.D.N.C. Mar. 17, 2015) (rejecting TCPA claim where plaintiff merely alleged "presence of 'hesitation' on the other end of the line").

31. Even assuming Plaintiff's ATDS allegation had not previously been considered and rejected by numerous courts, Plaintiff provides no facts—whatsoever—that connect his theories with actual ATDS usage on the part of Direct Consent. *See Neria v. Dish Network L.L.C.*, No. 6:19-cv-0430, 2020 U.S. Dist. LEXIS 108169, at *11-12 (W.D. Tex. June 19, 2020) ("The 'TCPA plaintiff has to prove that ATDS was used.'") (quoting *Ruffrano v. HSBC Fin. Corp.*, No. 15-cv-0958, 2017 U.S. Dist. LEXIS 132674, at *17 (W.D.N.Y. Aug. 17, 2017)). "Even though it may be difficult to plead the particulars of the alleged ATDS a defendant used, a plaintiff, nevertheless, must allege facts that would allow a court to plausibly infer that a defendant used an ATDS." *Hazan v. Wells Fargo & Co.*, No. 18-cv-10228, 2019 U.S. Dist. LEXIS 72748, at *3-4 (D.N.J. Apr. 30, 2019). Plaintiff's ATDS theory should therefore be dismissed at the pleading stage.

**E. Counts Four and Five should be dismissed because, if the three TCPA claims are dismissed, then this Court will lack subject-matter jurisdiction the remaining two.**

32. Assuming Plaintiff's TCPA claims in Counts One, Two, and Three are dismissed, then Counts Four and Five must also be dismissed because this Court will lack subject-matter jurisdiction as to Direct Consent.

33. Within Counts Four and Five, Plaintiff attempts to raise two statutory claims under Texas state law. Plaintiff alleges Direct Consent violated Texas Business & Commerce Code § 302.101. Plaintiff also alleges Direct Consent violated Texas Business & Commerce Code § 302.302.

34. If this Court rules Plaintiff is unable to state a claim under the TCPA against Direct Consent, then this Court will no longer have subject-matter jurisdiction over Plaintiff's §§ 302.101 and 302.302 claims. *See* 28 U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*,

383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

## III. CONCLUSION AND PRAYER

For the reasons set out in this motion, Direct Consent prays that this Court grant its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

SCHOUEST, BAMDAS, SOSHEA,
BENMAIER & EASTHAM PLLC

***/s/ Thomas G. Jacks***
Thomas G. Jacks
tjacks@sbsb-eastham.com
State Bar No. 24067681
5956 Sherry Lane, Suite 1450
Dallas, Texas 75225
Telephone: 945.468.2389

--and--

SCHENCK, PRICE, SMITH & KING, LLP

Thomas J. Cotton (*pro hac vice* pending)
Sierra Santana (*pro hac vice* pending)
tjc@spsk.com
ssantana@spsk.com
220 Park Avenue
Florham Park, New Jersey 07932
Telephone: 973.539.1000

*Attorneys for Defendant,*
*Direct Consent LLC*

**CERTIFICATE OF SERVICE**

On the 24th day October 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties pursuant to the Federal Rules of Civil Procedure.

*/s/ Thomas G. Jacks*
Thomas G. Jacks